IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CHRISTIAN CRUZ, | : | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 10-135 (JBS/JS) |
| v. | : | |
| HSBC and JUSTIN MOWLES, | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Alan J. Cohen, Esq.
McAllister, Hyberg, White, & Cohen
2111 New Road, Suite 105
Northfield, New Jersey 08225
        Attorney for Plaintiff

Vincent N. Avallone, Esq.
Kirkpatrick & Lockhart Preston Gates Ellis
One Newark Center, Tenth Floor
Newark, New Jersey 07102-5285
        Attorney for Defendants

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

Plaintiff, Christian Cruz, brought this action for defamation and wrongful discharge against Defendant HSBC Finance Corporation ("HSBC") and Defendant Mowles (collectively as "Defendants.")  (Notice of Removal ¶ 1.)  Presently this matter is before the Court on Defendants' motions to dismiss both counts for failure to state a claim pursuant to Rule 12(b)(6), Fed. R.

Civ. P. [Docket Items 3 & 10].[1]  As will be explained at length below, the Court finds that Plaintiff has stated a prima facie case for defamation but has failed to state a claim for wrongful discharge.  The Court will dismiss Count II for wrongful discharge without prejudice to Plaintiff's opportunity to request leave to file a curative amendment to provide a plausible basis for his claim.  Defendants' motions will be denied for Count I.

## II.  FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

The following facts comprise the sum of facts alleged in the Complaint.  Mr. Cruz was employed by HSBC for seven years. (Compl. Count I ¶ 1, Notice of Removal, Ex. A.)  HSBC allowed its employees personal use of the Internet while at work so long as it "did not interfere with their work, the work of other employees, or the operation of the Company's resources."  (Id. ¶ 2.)  At some point in time,[2] Mr. Cruz purchased a small gift for

---

[1]  Although HSBC and Mowles have submitted separate motions to dismiss, Mowles motion relies entirely on the arguments made by HSBC, so both motions can be addressed together.

[2]  Although the Complaint states that the incident occurred on October 13, 2009, the Complaint itself was dated October 6, 2009.  (Compl. 4, Notice of Removal, Ex. A.)  In its motion to dismiss, HSBC notes this error, (Br. in Supp. 2, 6 n.4), but does not plead a violation of the statute of limitations under N.J. Stat. Ann. § 2A:14-3 as an affirmative defense.  The Court acknowledges this error in the Complaint and declines to consider whether the limitation defense has been waived.  See Williams v. Bell Tel. Labs., 623 A.2d 234, 238-39 (N.J. 1993) (defense was waived by not pleading before trial).

his daughter during work hours.  (Id. ¶ 3.)  Sometime after this purchase Mr. Mowles, a management supervisor for HSBC, accused Mr. Cruz of "improper computer usage" without proof of any impropriety.  (Id. ¶¶ 4, 6.)  This accusation was communicated to other employees and management at HSBC and as a result Mr. Cruz was fired and has suffered emotional distress, financial loss, and loss of work benefits.  (Id. ¶ 4.)  Mr. Cruz asserts that the accusation was false and HSBC and Mr. Mowles failed to reasonably investigate or substantiate the veracity of the claim.  (Id. ¶¶ 5-6.)

On or about October 6, 2009,[3] Mr. Cruz brought this action in the Law Division of the Superior Court of New Jersey, Atlantic County.  (Notice of Removal ¶ 1.)  Defendant HSBC subsequently removed the action to this Court based on diversity jurisdiction under 18 U.S.C. § 1332.[4]  (Id. ¶ 5.)

On February 1, 2010, Defendant HSBC filed the instant motion to dismiss.  [Docket Item 3.]  On April 28, 2010, Defendant Mowles filed a motion to dismiss which wholly relied upon HSBC's

---

[3]  According to the Defendants, the case's docket sheet in state court reports that the Complaint was filed on October 5, 2009 although the Complaint is dated October 6, 2009. (Br. in Supp. 2 n.2.)

[4]  Mr. Cruz is a resident of New Jersey, HSBC is a Delaware corporation with a principal place of business in Illinois, and Mr. Mowles is a resident of Delaware.  (Notice of Removal ¶¶ 6-8.)

briefs.  [Docket Item 10.]   Briefing on both motions is now complete and they are ripe for a decision.

## III. DISCUSSION

### A.   Standard for Motion to Dismiss

In deciding the Defendants' motions to dismiss pursuant to Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  Thus, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

4

not do." <u>Twombly</u>, 550 U.S. at 555 (2007) (quoting <u>Papasan v.</u>
<u>Allain</u>, 478 U.S. 265, 286 (1986)).

> Therefore, after <u>Iqbal</u>, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part
> analysis. First, the factual and legal elements of
> a claim should be separated.  The District Court
> must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal
> conclusions.  Second, a District Court must then
> determine whether the facts alleged in the
> complaint are sufficient to show that the
> plaintiff has a "plausible claim for relief."  In
> other words, a complaint must do more than allege
> the plaintiff's entitlement to relief. A complaint
> has to "show" such an entitlement with its facts.

<u>Fowler</u>, 578 F.3d at 210-11 (citations omitted).

The court will thus look at each count separately
determining what would be required for a plausible case then
deciding whether the alleged facts are sufficient to meet this
minimum requirement.

**B.   Count I: Defamation**

To establish defamation under New Jersey law[5] a plaintiff
must show defendant (1) made a false and defamatory statement
concerning the plaintiff, (2) communicated the statement to a
third party, and (3) had a sufficient degree of fault.[6] <u>Singer</u>

---

[5]  By their briefs the parties have asked the Court to apply
New Jersey state law to this diversity action and the Court
has no basis to do otherwise.

[6]  The New Jersey Supreme Court has occasionally listed
"unprivileged publication" as an element of a successful

v. Beach Trading Co., 876 A.2d 885, 894 (N.J. Super. Ct. App. Div. 2005).  The Court will analyze each element separately and then consider whether a common law qualified privilege immunizes the Defendants from attack.

        1.   Elements of Defamation Claim

           **a.   False and Defamatory Statement Concerning the Plaintiff**

While the falseness of a statement is inherently a question of fact, whether a statement is defamatory is a question of law. Ward v. Zelikovsky, 643 A.2d 972, 978 (N.J. 1994).  A defamatory statement "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id. (quoting Restatement (Second) of Torts, § 559).  To determine whether a statement is defamatory a court must examine three factors: (1) content, (2) verifiability, and (3) context.  Id.

The Complaint alleges in a conclusory fashion that "these accusations by defendants were false."  (Compl. Count I ¶ 5,

---

defamation claim.  See Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1114 (N.J. 2009).  While a privileged statement cannot lead to liability, the New Jersey Supreme Court has also held that privilege is an affirmative defense to be established by the defendant, Coleman v. Newark Morning Ledger Co., 149 A.2d 193, 203 (N.J. 1959), as will be discussed below.  Allegations of the absence of privilege is therefore not an element of a prima facie case of defamation.

6

Notice of Removal, Ex. A.)  This is a legal conclusion and will be disregarded.  See Iqbal, 129 S. Ct. at 1950.  However it is possible to read the facts stated in the Complaint to satisfy the falsity and defamatory elements of a defamation claim.  It is plausible that buying a single small gift did not violate HSBC's Internet policy, and if it did not then the allegation of "improper computer usage" was false.  With regard to the defamatory nature of the accusation regarding computer usage, the content and context of this verifiable statement could deter others from associating with the Plaintiff due to the allegations of impropriety and failure to abide by the workplace rules.  The alleged accusation tends to harm Plaintiff's reputation by representing him as an irresponsible and dishonest employee.  See Ward, 643 A.2d at 978.  Therefore the Court finds the statement, as alleged, is defamatory.  Thus, there are facts showing that the first element of the claim was stated.

### b.   Communication to a Third Party

To satisfy the communication element of a defamation claim a plaintiff must plead facts that enable the defendant to identify the defamer and the circumstances of the publication.  Printing Mart-Morristown v. Sharp Elec. Corp., 563 A.2d 31, 46 (N.J. 1989).  A plaintiff must plead "when, where, by which defendants and by what words, written or oral, plaintiff was defamed."

7

Zoneraich v. Overlook Hosp., 514 A.2d 53, 62 (N.J. Super. Ct.
App. Div. 1991).  Complaints that vaguely allege that defamatory
statements were made to "third parties" are insufficient.  See
Foy v. Wakefern Food Corp., No. 09-1683, 2010 WL 147925, *6
(D.N.J. Jan. 7, 2010) (complaint alleging defamatory statement to
"third parties" dismissed).  However a plaintiff does not need to
contain "a verbatim transcription of the words spoken,
accompanied by an exhaustive narrative of the circumstances"
Kotok Bldg. v. Charvine Co., 443 A.2d 260, 262 (N.J. Super. Ct.
Law Div. 1981).

       The Complaint in the present case presents a close call.
While it would be more clear had the Complaint been more specific
about which "employees and management at defendant HSBC" (Compl.
Count I ¶ 4, Notice of Removal, Ex. A) the allegedly false
statements were made to, the Court believes that the Complaint
describes the alleged facts of publication with enough
particularity to provide the defendant with knowledge of the
circumstances.  This conclusion is distinguishable from cases
that included only vague allegations regarding publication.  See
e.g. Novartis Pharm. Corp. v. Bausch & Lomb, Inc., No. 07-5945,
2008 WL 4911868, *6, (D.N.J. Nov. 13, 2008) (complaint alleging
that "customers" were contacted by defendant at some point after
termination of contract and told "directly or by implication"

8

that plaintiff was falsely taking credit for sales failed to state a claim).  It is sufficiently clear here what the statement itself was, approximately when it was made, who made it, and to whom it was made.  The audience of relevant "employees and management" at Plaintiff's place of employment is a narrow population that can be easily identified by the Defendants.  Publication can be supported at this stage from the pleaded facts.

### c.    Fault

A showing of fault is required by the Supreme Court's decision in <u>Gertz v. Welch</u>, 418 U.S. 323, 347 (1974), which saw fault as the way to square the First Amendment with an individual's right to protect his or her reputation from false accusations.  Restatement (Second) of Torts, § 580B, comment c.  Where the person defamed is a private party and the statement involves a private matter, the fault element is met by showing that the person communicated the false statement "while acting negligently in failing to ascertain the truth or falsity of the statement before communicating it."  <u>Feggans v. Billington</u>, 677 A.2d 771, 775 (N.J. Super. Ct. App. Div. 1996).

The Plaintiff asserts that the accusations were made without proof of any misconduct by Plaintiff.  (Compl. ¶ 6, Notice of Removal, Ex. A .)  The Court finds that a reasonable supervisor

9

would not allege violations of company policy without some proof.
As a consequence Plaintiff has provided facts to suggest that
Defendants were negligent because they failed to take any steps
to ascertain the truth of the statement before communicating it.
Based on the facts as presented in the Complaint, Plaintiff has
alleged sufficient facts to state a prima facie case for
defamation.

       2.   <u>Qualified Privilege</u>

Defamation claims involve a balancing between protecting
reputations against false attacks and serving the public interest
of free communication.  Common law qualified privilege is one of
the ways that the law strikes this balance.  <u>Dairy Stores v.
Sentinel Publ'g Co.</u>, 516 A.2d 220, 225-26 (N.J. 1986).

The Court will consider whether the Complaint makes a
qualified privilege apparent.  Qualified privilege is an
affirmative defense. <u>Coleman v. Newark Morning Ledger Co.</u>, 149
A.2d 193, 203 (N.J. 1959) ("[T]he defendant has at the outset the
burden of establishing the existence of a privileged occasion for
the publication . . ."); <u>Binkewitz v. Allstate Ins. Co.</u>, 537 A.2d
723, 730 (N.J. Super. Ct. App. Div. 1988) ("Just as in a
defamation action, the qualified privilege is a defense which
must be raised by defendant."); <u>see</u> <u>Prof'l Recovery Servs., Inc.
v. Gen. Elec. Capital Corp.</u>, 642 F. Supp. 2d 391, 400 (D.N.J.

2009); Restatement (Second) of Torts ch. 25 (grouping privileges to defamation within chapter on defenses). "[A]n affirmative defense may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint." Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (emphasis removed).[7]

A communication is privileged if the person communicating the alleged falsehood and the audience have a commensurate interest or duty in the communication. Prof'l Recovery Servs., 642 F. Supp. 2d at 400. This privilege is drawn from English common law[8] and is still used by New Jersey courts today. See

_____

[7]    In Iqbal the Supreme Court found that government officials were entitled to qualified immunity on a motion to dismiss, saying that the immunity was both a defense and an "entitlement not to stand trial or face other burdens of litigation." 129 S. Ct. at 1946 (quoting Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). This Court does not find it clear that the qualified privilege for defamation grants the same type of entitlement at the motion to dismiss stage as a qualified immunity for high government officials. Compare Rocci v. Ecole Secondaire Macdonald-Cartier, 755 A.2d 583, 588 (N.J. 2000) (noting that "summary judgment is particularly appropriate for disposing of non-meritorious defamation suits") with Iqbal, 129 S. Ct. at 1953 ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'") (quoting Siegert v. Gilley, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring)). However, based on Bethel, the Court will consider whether a qualified privilege is apparent from the Complaint.

[8]
    A communication made bonâ fide upon any subject matter in which the party communicating has an

<u>Williams v. Bell Tel. Labs.</u>, 623 A.2d 234, 240 (N.J. 1993);
<u>Gulrajney v. Petricha</u>, 885 A.2d 496, 506 (N.J. Super. Ct. App.
Div. 2005).  This common law privilege "arises out of a
legitimate and reasonable need, in particular situations, for
private people to be able freely to express private concerns to a
limited and correlatively concerned audience, whether or not
those concerns also touch upon the public interest in the broad
sense." <u>Bainhauer v. Manoukian</u>, 520 A.2d 1154, 1169 (N.J. Super
Ct. App. Div. 1987).  "The test to determine whether a
communication is entitled to the common interest privilege
requires the Court to look to (1) the appropriateness of the
occasion on which the defamatory information is published, (2)
the legitimacy of the interest thereby sought to be protected or
promoted, and (3) the pertinence of the receipt of that
information by the recipient." <u>Prof'l Recovery Servs.</u>, 642 F.
Supp. 2d at 401 (citing <u>Bainhauer</u>, 520 A.2d at 1170).  This
determination is a question of law to be made by the Court.  <u>Id.</u>

The defendant argues that it is "well settled" that as a
matter of law all communication within the workplace regarding

---

interest, or in reference to which he has a duty,
is privileged, if made to a person having a
corresponding interest or duty, although it contain
criminatory matter which, without this privilege,
would be slanderous and actionable.
<u>Harrison v. Bush</u>, (1855) 119 Eng. Rep. 513 (Q.B.).

discharge or discipline is privileged.  (Def.'s Br. 7.)  This
position is supported by some older cases such as Ramsdell v.
Pennsylvania Railroad Company, 75 A. 444, 445 (N.J. 1910) and
Sokolay v. Edlin, 167 A.2d 211, 218 (N.J. Super. Ct. App. Div.
1961) which apply the qualified privilege to the workplace
without looking at the appropriateness of the occasion, the
legitimacy of the interest, and the pertinence of the information
to the recipient, relegating these considerations to an
assessment of whether the privilege was abused.  More recently,
however, New Jersey courts have rejected any brightline rule and
instead assess the circumstances of the allegedly defamatory
conduct more fully to see if they justify recognizing a
privilege.  See Prof'l Recovery Servs., 642 F. Supp. 2d at 401
(circumstances justified former employer's privilege to report
alleged improper use of personal financial data to prevent
consumer fraud and identity theft); Fees v. Trow, 521 A.2d 824,
828 (N.J. 1987) (justifying employee's privilege to tell
supervisor about abuse by other employees at facility for
developmentally disabled in part due to legitimacy of interest);
Govito v. W. Jersey Health Sys., Inc., 753 A.2d 716, 726 (N.J.
Super. Ct. App. Div. 2000) (circumstances justified health
professional's privilege to raise concerns of a co-worker's
possible drug abuse); Bainhauer v. Moukian, 520 A.2d 1154, 1170

13

(N.J. Super. Ct. App. Div. 1987) (justifying health professional's privilege to speak about other health professionals in part due to public interest in health care). These cases took the time to look at the circumstances and to justify the privilege, so the Court finds that a defendant cannot avoid the test stated in Bainhauer just because the alleged defamation occurred in a workplace and concerned discharge or discipline. Often the circumstances related to discharge or discipline will be appropriate to justify a privilege, but the Court declines to find that this is true as a matter of law.

Applying the Bainhauer test to the present case, it is not clear from the face of the Complaint that Defendants are entitled to a qualified privilege. First, the Complaint states little about the occasion of the publication and the precise manner of the publication. Second, while co-workers certainly have some degree of common interest, there is nothing in the Complaint to indicate what the common interests related to the computer policy are and therefore it is impossible to assess the legitimacy of those interests. Third, the recipients are identified as "employees and management." This is not enough information for the Court to assess whether their receipt of the statements was pertinent. While a supervisor might need to know about an employee's misuse of computers, other colleagues may have no such

14

interest.  Absent sufficient facts regarding the circumstances surrounding the publication, the interests involved, and the pertinence of the communication to those who received the information, the Court cannot determine whether the qualified privilege is applicable.

Plaintiff has pleaded enough facts to form the basis of a plausible defamation claim, but not enough to make the assertion of the affirmative defense of a qualified privilege "apparent from the face of the complaint."  Bethel, 570 F.2d at 1174.  The Defendants' motions to dismiss this claim will be denied.

### C.    Count II: Wrongful Discharge

It is unclear to the Court what cause of action is being stated by the Plaintiff in Count II.  Count II reads in its relevant part: "At all times herein [defendants] either omitted to conduct a reasonable and accurate investigation of the facts and circumstances of the defamatory allegations against Plaintiff or so negligently and deficiently conducted those investigations that such negligence proximately caused the termination of plaintiff's employment with defendants." (Compl. Count II ¶ 2, Notice of Removal, Ex. A.)  While this count seems to be duplicative of the fault element of defamation, the Court will

construe the complaint liberally and assess the complaint as one for wrongful discharge.[9]

A cause for wrongful discharge exists in New Jersey "when the discharge is contrary to a clear mandate of public policy." Tartaglia v. UBS PaineWebber, Inc., 961 A.2d 1167, 1179 (N.J. 2008) (quoting Pierce v. Ortho Pharm. Corp., 417 A.2d 505, 512 (N.J. 1980)).  The employee must identify a specific expression of public policy in a source such as "legislation; administrative rules, regulations or decisions; and judicial decisions." Pierce, 417 A.2d at 512.  The Plaintiff's purchase of a gift for his daughter was a kind act.  Plaintiff, however, has not pointed to a clear mandate of public policy to make this action into more than a personal issue.  The Complaint failed to state a claim for wrongful discharge.

### D.   Prejudice

The only remaining question is whether Count II should be dismissed with or without prejudice.  Generally, a party may amend its pleadings with consent of the opposing party or the court's leave and "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Reasons not to

---

[9]  While the word "negligence" is used in the Complaint, (see Compl. Count II ¶ 2) and the Plaintiff's Opposition Brief (see Opp'n Br. 2) the Court does not find that the Complaint sufficiently states a cause of action for negligence that is independent from his defamation claim.

give leave include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).  Amendment would be futile if amended the Complaint would still fail to state a claim sufficient to survive a 12(b)(6) motion.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

At this point amendment would not necessarily be futile.  If the Plaintiff believes he can present a specific expression of public policy or new facts[10] that will cure the deficiencies discussed in this opinion, then he can submit a motion to request leave to amend his complaint along with a draft amended complaint.  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) (stating long-standing rule that draft amended complaint must be submitted along with a request for leave to amend).  The Defendants can then challenge

---

[10]  The court notes that the Plaintiff seems confused about the relationship between pleadings and discovery.  To have the opportunity to engage in discovery under Rule 26, a plaintiff must first submit a pleading showing that the pleader is entitled to relief as required by Rule 8(a)(2).  See e.g. Iqbal, 129 S. Ct. at 1950 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

17

such motion.  The Court declines to decide, without the benefit of a proposed amended complaint, that any amendment would necessarily be futile.  The Court appreciates the need for closure, however, and will limit the Plaintiff's opportunity to file for leave to amend to 14 days.  If a timely motion to amend is not forthcoming, then the dismissal of Count II will be with prejudice.

**IV.  CONCLUSION**

For the reasons expressed in this Opinion, the Court partially grants Defendants' motions for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Count II is dismissed, but the motions are denied with respect to Count I.  Plaintiff may file a motion for leave to amend the Complaint to cure the defects within fourteen (14) days, if it can do so consistent with this Opinion.  The accompanying Order is entered.


**July 26, 2010**                      **s/ Jerome B. Simandle**
Date                                   JEROME B. SIMANDLE
                                       United States District Judge

18